| | |
|---|---|
| JOHN JOHNS<br>vs.<br>JAMES REARDON.<br>—<br>OTHO SCOTT<br>vs.<br>JAMES REARDON AND WIFE,<br>AND JOHN JOHNS. | MARCH TERM, 1852. |

———

[REGISTRATION OF DEEDS—CONSTRUCTIVE NOTICE—ACKNOWLEDGMENT OF DEEDS—PRACTICE.]

———

THE policy of the registry acts has nothing to do with the question of fraud; the operation of these acts may bind the title, but does not affect the con-

science of 'the party taking the subsequent conveyance, whilst in cases which are not within those acts, the subsequent purchaser is only affected with such actual notice as would amount to fraud.

Subsequent purchasers are not affected by constructive notice of prior registered deeds and conveyances, unless they are such as are required by law to be registered: the doctrine of constructive notice has never been understood to extend to all deeds which may be *de facto* registered, but to such only as are authorized and required by law to be registered, and are duly registered in compliance with law.

Where an acknowledgment of a mortgage was defective in not being acknowledged before two justices of the peace of the county where the land was situated or the grantors resided, such defect cannot be cured by its registration in the county where the land lies, and notwithstanding such registration, it is wholly insufficient to pass title.

The 3d sec. of the Act of 1766, ch. 14, prescribes the form of the certificate to be given by the clerk of the county in which the acknowledgment is made; and when that form is pursued, either in terms or in words of equivalent import, the clerk of the county where the lands lie is authorized to enrol the deed: he cannot look out of the certificate, and decide whether the deed had or had not been acknowledged before persons authorized to take it.

But such enrolment does not give to the deed enrolled the attributes of a valid conveyance: the instrument still, when thus recorded, and the record thereof, both with reference to its efficacy to pass title, and to its influence upon the rights of others who may become interested in the property conveyed, depend upon whether it was executed and acknowledged according to law.

A certified copy of a deed cannot be more available than the original, the execution of the latter being first duly proved.

A mortgage of lands situated in Harford county, where also the grantors resided, was acknowledged before two justices of the peace of the city of Baltimore, whose qualification was duly certified by the clerk of Baltimore county, and the deed was recorded in Harford county. HELD—

That this deed could not affect a subsequent mortgagee with constructive notice.

Whether the registry of this mortgage was constructive notice to the subsequent mortgagee, depends upon the admissibility in evidence of an official copy thereof from the records of Harford county.

Upon a bill to foreclose a mortgage executed by husband and wife, the wife is a necessary party to the proceedings.

[The facts of this case are fully stated in the opinion of the Chancellor.]

THE CHANCELLOR:

It appears by the proceedings in these cases, which, by an

agreement filed on the 30th of January last, are to be consolidated, that on the 25th of April, 1839, James Reardon and wife, of Harford county, conveyed to John Johns, the complainant in the first of the above-named cases, a tract of land, situate in the same county, by way of mortgage, to secure the payment of two thousand dollars in the manner therein mentioned.

This deed was on the same day acknowledged by the grantors before two justices of the peace for the city of Baltimore, their qualification duly certified by the Clerk of Baltimore County Court, under the seal of his office, on the following day, and was enrolled by the Clerk of Harford County Court among the land records of the last-named county, on the 18th of May of the same year. All these facts appear upon the face of the deed; and it is moreover in proof, that the grantors therein were, prior to and at the date of its execution and acknowledgment, and ever since have been and are now citizens of, and residing in, Harford county.

It further appears, that on the 8th of December, 1841, Reardon and wife executed to Otho Scott, the complainant in the last of the above-named cases, a mortgage of the same lands to secure the payment of five thousand dollars, as expressed in the deed, which mortgage was acknowledged before an associate judge of the sixth judicial district, on the day of its execution, and duly enrolled among the land records of Harford county on the 15th of the same month and year.

Bills have been filed upon these mortgages by the respective mortgagees, that by Johns against James Reardon alone omitting to make a party of his wife; that by Scott against Reardon and wife, and Johns, the prior mortgagee; and the material question raised and discussed in the written arguments of the solicitors of the parties is, which of the two mortgages is entitled to priority of payment, supposing the proceeds of the sale of the premises should be inadequate to pay both.

There can, of course, be no doubt that the mortgage to Johns is radically defective, not having been acknowledged before two justices of the peace of the county in which the

lands lie, or in which the grantors resided, as required by the acts of 1715, ch. 47, and 1766, ch. 14, or in any other of the modes prescribed by law.

It is not disputed that the mortgage to Johns is invalid as a legal conveyance, but it is insisted that, *inter partes*, it is a good equitable lien; and that having been recorded in the county in which the lands lie, Scott, the second mortgagee, is affected with constructive notice, and that his mortgage must be postponed to the prior equitable lien of Johns.

It may be that as between the parties themselves, or, at least, as far as Reardon is concerned, the mortgage to Johns, though void at law as a conveyance, may be good in equity as a contract; and that a court of chancery, in a controversy in which their rights alone are concerned, would give it efficacy as a contract. That may very well be, and yet in this case, in which the rights of a subsequent incumbrancer are involved, a very different determination may be arrived at. There is no pretence here that Scott, the second mortgagee, when he loaned the money, or took the security from Reardon and wife, had notice in fact, or any the slightest reason to suspect the existence of the prior instrument. If, therefore, he is to be affected by it, it is upon the doctrine of constructive notice, founded upon the registration of the first conveyance and the policy of the registry act.

This policy has nothing to do with the question of fraud. The operation of the registry acts may bind the title, but do not affect the conscience of the party taking the subsequent conveyance, whilst in cases which are not within those acts the subsequent purchaser is only affected by such actual notice as would amount to fraud. 1 *Story's Eq.*, Secs. 401 & 403; *Dey vs. Dunham*, 2 *Johns. Ch. Rep.*, 190, 191.

The doctrine is too firmly established to be doubted that subsequent purchasers are not affected by constructive notice of prior registered deeds and conveyances, unless they are such as are required by law to be registered. It has never been understood to extend to all deeds which may be, *de facto*, registered, but to such only as are authorized and required by

law to be registered, and are duly registered in compliance with law. 1 *Story's Eq., Sec.* 404; *Lessee of Heister* vs. *Fortner*, 2 *Binney*, 40; *Frost* vs. *Beekman*, 1 *Johns. Ch. Rep.*, 288.

In the last-cited case the Chancellor said, "The question does not necessarily arise how far the unauthorized registry of a mortgage, as one made, for instance, without any previous legal proof or acknowledgment, would charge a purchaser with notice of the mortgage"—"the better opinion in the books seems to be, that it would not be notice, and that equity will not interfere in favor of an incumbrancer, when he has not seen that his mortgage was duly registered."

It would seem, therefore, upon authority to be quite clear, that the mere fact that the mortgage to Johns was enrolled in Harford county would not have the effect of binding Scott by constructive notice, unless such enrolment was authorized and required by law; and the question therefore is, was the deed to Johns, notwithstanding the obvious and admitted defect in the acknowledgment, authorized and required by law to be recorded? It is too clear for controversy that the defect in the acknowledgment was not and could not be cured by the registration, and that notwithstanding the registration, the deed was wholly insufficient to pass the title. The case of *Gittings* vs. *Hall*, reported in 1 *H. & J.*, 15, and 2 *H. & J.*, 380, is conclusive upon this point. The deed in that case from Ogle and wife to James Bosley, was, in reference to the acknowledgment, the precise counterpart of the deed in this case; and yet, though enrolled in the county in which the land lay, it was adjudged defective and inadmissible in evidence as a link in the chain of title attempted to be made out in that case, or rather, to prove the statement on which the jury were asked to ground the presumption of another deed, which was essential to the plaintiff's title.

In the case of *Gittings and Hall*, the Court of Appeals, when it was first before them, decided, that though the deed was defective upon its face, because the acknowledgment was made before two justices of the peace for Prince George's county, when the grantors in the deed were described as of

Anne Arundel county, and the land conveyed as lying in Baltimore county, yet said, that the party offering the deed might give evidence, *aliunde,* that the grantors resided in Prince George's, if such was the fact; and accordingly, upon the second trial in the General Court, evidence to that effect was offered.   Upon this evidence, the General Court instructed the jury that a temporary residence was sufficient, and stated, hypothetically, various facts which, they said, if found by the jury, would establish such temporary residence; and the verdict being for the plaintiff, the case was again taken up upon appeal.

The Court of Appeals again reversed the judgment of the General Court, thus not only dissenting from the instructions given to the jury upon the second trial, but again declaring the deed from Ogle and wife inadmissible.

Upon turning to the certificate of the Clerk of Prince George's County Court, as to the qualification of the justices of the peace who took the acknowledgment of Mr. and Mrs. Ogle, it will be found that, instead of using the words contained in the 3d section of the Act of 1766, ch. 14, that the justices by whom the acknowledgment was taken, were " duly commissioned and sworn," he says they were " legally authorized and assigned;" and this was made an objection to the deed.   The General Court, however, decided that the certificate was good and sufficient in law to warrant the enrolling the deed by the Clerk of Baltimore County Court, and the Court of Appeals said that the said certificate gave an authority to the Clerk of Baltimore County Court to record the deed, being of opinion that the words " legally authorized and assigned" were within the meaning of the Act of Assembly. Upon recurring to the 3d section of the Act of 1766, ch. 14, it will be seen that the certificate of the Clerk of the county, as to the qualification of the magistrates before whom the acknowledgment is made, as therein provided, is declared to be " a sufficient warrant for the Clerk of the county where the lands do lie, to enrol the deed or conveyance and the endorsement thereon;" and all the Court of Appeals can be under-

stood to have decided is, that the certificate being on the deed, and being in its terms within the meaning of the Act of Assembly, it was a sufficient warrant for the Clerk of the county where the lands lay to record it. In other words, that the Clerk of the latter county could not look out of the certificate of the Clerk of the county in which the acknowledgment was made, and decide whether the deed had or had not been acknowledged before persons authorized to take it. His warrant for the enrolment of the deed was the certificate; and if that was in proper form, he was authorized to put it upon record, whatever the effect of the enrolment might be upon the rights of the parties, or of others.

The 3d section of the Act of 1766, ch. 14, prescribes the form of the certificate to be given by the Clerk of the county in which the acknowledgment is made, and that form being pursued either in terms or in words of equivalent import, the Clerk of the county within which the lands lie is authorized to enrol the deed, but it by no means follows that such enrolment will give to the instrument enrolled the attributes of a valid conveyance, for that would be directly repugnant to the second and preceding parts of the 3d section of the Act, which declare that the estates therein mentioned shall not pass or take effect, unless the deed or conveyance by which the same shall be intended to pass or take effect shall be acknowledged as is therein directed; and although, therefore, the Court of Appeals, in the case of *Hall and Gittings,* expressed the opinion that the certificate of the Clerk of Prince George's County Court being within the meaning of the Act of Assembly, gave an authority to the Clerk of Baltimore county to record the deed, still the instrument when recorded, and the record thereof, both with reference to its efficacy to pass the title, and to its influence upon the rights of others who may become interested in the property attempted to be conveyed, depends upon whether it was executed and acknowledged according to law. It is very certain that the registration of the deed from Ogle and wife, in the case cited, did not cure the defect in the acknowledgment, because the Court of Appeals twice reversed

the judgment of the General Court, in consequence of the latter having admitted that deed in evidence.

The original deed appears to have been offered in that case, but that being adjudged to be inadmissible, it follows necessarily that a copy from the record would not have been received, because it is impossible to maintain that a copy would be more available than the original, the execution of the latter being first duly proved.

Though the doctrine in this state undoubtedly is, that the registry of a deed is constructive notice to subsequent purchasers and mortgagees, it is, as has been shown, equally well settled, that such purchasers and mortgagees are not affected with notice, unless the deeds are such as are authorized and required by law to be registered. A deed unduly registered, either from want of a valid acknowledgment or otherwise, is not notice according to the prevailing opinion in this country. 4 *Kent's Com.*, 174.

Assuming that a copy of the deed in this case from the records of Harford county would be inadmissible as evidence, and this is an assumption which will hardly be disputed, and it follows inevitably that it was not executed and acknowledged in the mode prescribed by law to require its registration, because, if such was the case, an official copy from the record would be evidence; the rule being, that such copies are evidence when the instrument is required by law to be recorded, and this I take to be the test by which the question now before the Court is to be decided, that is, whether the registry of the first mortgage to Johns was constructive notice to Scott, the second mortgagee? If the mortgage to Johns was authorized and required by law to be registered, then an official copy from the record would be evidence; but if a copy would not be evidence, it must be because the law did not authorize and require the registration of the original; and as the question of constructive notice to subsequent purchasers and mortgagees depends upon the due and legal registration of the deed, upon which likewise depends the admissibility of a copy as evidence, it follows that if a copy would not be evidence, the

registry cannot affect subsequent purchasers and mortgagees with notice.

I do not think it possible to maintain, successfully, that a copy from the record of the mortgage to Johns would be admissible evidence, and, therefore, I am of opinion that the registry of it is not to be held as affecting Scott with constructive notice; and as there is no pretence or intimation anywhere that he had actual notice, his mortgage having been duly executed, acknowledged, and recorded, is entitled to priority of payment, should the proceeds of the sale of the premises prove insufficient to satisfy both mortgages.

The Chancellor will sign a decree for the foreclosure and sale of the mortgaged premises, first, to pay the mortgage debt of Mr. Scott, and reserving to the complainant, Mr. Johns, the right to come in upon the surplus proceeds of sale, when the difficulty in regard to the omission to make the wife of the mortgagor a party to his bill is removed by amendment or agreement, and reserving also the question of his right under his mortgage to be paid out of that portion of the mortgaged premises which belonged to the wife of the mortgagor, the Court not meaning now to decide that the mortgage, though defectively acknowledged, can, in equity, be supported as a contract against her.

JAMES L. BARTOL and CHARLES H. PITTS, for Johns.
ALBERT CONSTABLE, for Scott.

[An appeal was taken in this case, which is still pending.]